JOSEPH P. RUSSONIELLO (CABN 44332)
United States Attorney

BRIAN J. STRETCH (CABN 163973)
Chief, Criminal Division

EUMI L. CHOI (WVBN 722)
Assistant United States Attorney

   150 Almaden Boulevard
   San Jose, California 95113
   Telephone: (408) 535-5079
   Facsimile:  (408) 535-5066
   Email: Eumi.Choi@usdoj.gov

Attorneys for the United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>v.<br><br>ERIC ERDMAN,<br><br>    Defendant. | No. CR 07-00390<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Date: February 4, 2008<br>Time: 1:30 p.m.<br>Court: Hon. James Ware |

    The United States hereby submits its sentencing memorandum in the above-referenced case. The United States agrees with the Probation Office that the total adjusted offense level is 32. Given Erdman's Criminal History Category of I, the defendant falls within the range of 121 to 151 months. The United States asks that the Court impose a sentence of 130 months, which is a reasonable sentence under Section 3553(a).

    A.     **Factual Background**

    On February 2, 2007, FBI agents executed a federal search warrant on the residence of Eric Erdman, at 125 Connemara Way, Unit 107, Sunnyvale, CA. (Declaration of Special Agent Lisa

Miller (hereinafter "Miller Decl.") (Exhibit A).¹ During the execution of the warrant, defendant Erdman voluntarily admitted that he initially became aware that he could find child pornography using file sharing programs. (Miller Decl. ¶ 3.) Approximately two years ago, he began actively searching for child pornography by using key terms such as "Vicky" and "child." (Id.) He was able to find child pornography by browsing other shared folders available in the file sharing program. (Miller Decl. ¶ 4.) He downloaded the files he selected to his Limewire share folder. (Id.) Defendant Erdman stated that he was aware that the files in his shared folder were available to other individuals using the Limewire software. (Id.)

Also during the execution of the search warrant, FBI agents seized two computers which were in his bedroom and on which, as the defendant informed the agents, there would be child pornography. Defendant informed the agents that his sexual preference was for young girls at least 10 years old; he further admitted that he masturbated while viewing images of such child pornography. (Id.)

Later analysis revealed over 4,000 active images depicting children engaged in sexually explicit conduct. (Id at 5.) On March 24, 2007, the National Center of Missing and Exploited Children ("NCMEC") provided a Child Victim Identification Program Report, documenting the comparison of the images and videos contained on the computers seized from the defendant with the known child victim database. (Id.) The report showed that the defendant had been in possession of 1,234 known victim images of child pornography ("known victim images") and

//
//

---

¹ As the Court is aware, the Federal Rules of Evidence do not apply to sentencing hearings. Fed. R. Evid. 1101(d)(3). Instead, "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3. Special Agent Miller's Declaration should clearly be considered by the Court. It simply summarizes some of the pertinent facts of the investigation, as provided in the discovery that has been turned over to the defense, and it provides a few examples of the child pornography images at issue. Likewise, the victims impact statements discussed below are properly before the Court for due consideration at sentencing.

two known victim videos of children engaged in sexually explicit conduct.[2] These images and videos derived from 39 different series originating from various locations throughout the world. In sum, defendant Erdman had been in possession of over 4,000 active images and 16 videos containing child pornography. (Id.)

For example, defendant Erdman's collection contained images from the "Helen" series of known victim images. Helen was one of three children abused by her stepfather and neighbor. Id. In this case, which originated in the UK, Helen disclosed that her stepfather was engaging in sexual intercourse with her. Id. Investigation revealed that both her stepfather and neighbor sexually abused not only Helen but the other two children for a number of years. Id. The abuse was photographically documented and uploaded to the Internet by the abusers. Id.

Below is a description of three images from the "Helen" series, all of which defendant was in receipt of and possessed:

(a) The image containing filename "kiddy porn 10yr-anal[523083].jpg" is described as an approximately seven-year old girl being anally penetrated by an adult male penis.

(b) The image containing filename "/Pedo Pedofilia Kids Child Porn 113[443343].jpg" is described as an approximately seven-year old girl lying naked on a bed with a male ejaculating on her chest and an adult male penis in the vicinity of her stomach area.

(c) The image containing filename ""/Pedo Pedofilia Kids Child Porn 113[443346].jpg" is described as an approximately seven-year old girl being penetrated from behind by an adult male.

Id.

Erdman's collection contained images depicting pre-pubescent children in addition to children engaged in various sadomasochistic acts, such as bondage. (Miller Decl. ¶ at 7.) Below are descriptions of a few of these images.

(a) The image containing the filename "PTHC Ultra Hard Pedo Child Porn Pedofilia(new)054[523471].jpg" is described as an approximately six-year old girl sitting on her knees, naked with her hands bound behind her back.

(b) The image containing filename "pre-pedo-with a smile[523429].jpg" is described as an approximately five-year old girl lying naked face down on a bed while being anally penetrated from behind by an adult male penis.

---

[2] "Known victim images" refers to those images of child pornography in which the child's name, age, and circumstances of abuse are known to law enforcement. (Miller Decl. ¶ 5.)

3

      (c)      The image containing filename "ll-n4fl18[432322].jpg" is described as an approximately four-year old boy orally copulating a naked adolescent female while she is lifted off the ground by a naked adult male.

Id.

During the execution of the search warrant, agents also recovered from the defendant 16 videos depicting children engaged in sexually explicit conduct with each other and/or adults. For example, one video containing the name "(Hussyfan)(Pthc)-K-K!!!New-5Yo Rca (Marisa)-Young Girl Lolita Pedo Fuck Brother [141569.avi]" is a three-minute, four second video clip depicting an approximately five-year old girl orally copulating and being anally penetrated by an adult male. (Miller Decl. ¶ 8.)

On October 22, 2007, Erdman pleaded guilty to one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and one count of criminal forfeiture under 18 U.S.C. § 2253(a)(1) and (a)(3).

### B. The Court Should Impose A Sentence of 130 Months, Which is a Reasonable Sentence After Considering the Factors Under Section 3553(a)

In the present case, the United States asks that the Court sentence Erdman to a custodial term of 130 months, reflecting a Guidelines range sentence and which is a reasonable sentence after considering the factors set forth in 18 U.S.C. § 3553(a).

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court instructed that a sentencing court should take the Guidelines into account and also fashion a reasonable sentence reflecting the seriousness of the offense, promote respect for the law, provide for just punishment, provide adequate deterrence, and protect the public under 18 U.S.C. § 3553(a). Booker, 125 S. Ct. at 765. The Guidelines are advisory now, Booker, id.; Rita v. United States, 127 S. Ct. 2456 (2007). The Supreme Court has held that when a district court applies a sentence within a properly calculated Guidelines range, the courts of appeals may apply a presumption of reasonableness to that sentence. Rita, id. at 2465. But the district court cannot presume the Guidelines range is reasonable, and "must make an individualized assessment based on the facts presented" in sentencing a defendant, Gall v. United States, 2007 WL 4292116 (Dec. 10, 2007). To impose a non-Guidelines sentence, the district court must ensure that the justification

supports the variance. Id. At 7. Appellate courts are to review sentences for reasonableness under an abuse of discretion standard. Kimbrough v. United States, 2007 WL 4292116 (Dec. 10, 2007)(sentencing judge need not accept the policy judgments implicit in a Guidelines provision).

In the present case, the 130 months of incarceration requested by the United States falls within the properly calculated Guidelines Range. Therefore, if this Court determines to impose a 130-month sentence, the Ninth Circuit may presume that this sentence is reasonable. Moreover, a 130-month sentence is indeed reasonable after considering the factors under Section 3553(a).

Section 3553(a), entitled "Factors to be considered in imposing sentence," provides as follows:

> The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider -
>
>   (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
>   (2) the need for the sentence imposed -
>
>     (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
>     (B) to afford adequate deterrence to criminal conduct;
>
>     (C) to protect the public from further crimes of the defendant; and
>
>     (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
>   (3) the kinds of sentences available;
>
>   (4) the kinds of sentence and the sentencing range established for - (A) the applicable category of offense committed by the applicable category of defendant as set forth in the [Sentencing] guidelines . . . that . . . are in effect on the date the defendant is sentenced;
>
>   (5) any pertinent policy statement - (A) issued by the Sentencing Commission . . . that . . . is effect on the date the defendant is sentenced;
>
>   (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.
>
>   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Thus, under Section 3553(a), this Court shall impose a sentence that reflects (1) the nature and circumstances of the offense, and (2) the history and characteristics of the defendant; and the sentence should (3) reflect the seriousness of the offense, (4) promote respect for the law, provide for just punishment, (5) provide adequate deterrence, and (6) protect the public.

Defendant Erdman was in receipt of an abundance of child pornography – a total of 5,200 images, taking into account the 4,000 active images and 16 videos (of which each counts as 75 images); that is, well over the 600 images necessary for a five level guidelines enhancement for specific offense characteristics. U.S.S.G. §2G2.2(b)(7)(D). Moreover, these images and videos featured disturbing sadistic or masochistic conduct as described above of young children, both boys and girls.

Further, real people have been hurt very badly by actions such as those of defendant Erdman. The images, though profoundly disturbing, can provide a distance between the judicial system and the victims. While no one can seriously dispute that these crimes have victims, too often the victims remain unknown and unidentified, and thus the extent of their victimization as well as the gravity of the crimes against them is not always fully appreciated. It can be too easy to gloss over the fact that there are tangible and real people who have suffered in these crimes. This should be resisted. But, here, we have three (redacted) victim statements – two by two young brothers, both of whom are known victims, and the parent of another known victim. They provide a convincing accounting of the harm done to them – not just to the children themselves, but also to their family members. They also establish clearly that the receipt of child pornography is a very serious offense that harms the victims.

In one victim impact statement (Exhibit B), the victim, a 12 year-old boy in the 7th grade, conveys his deep sense of embarrassment and shame stemming from the knowledge that the sexually explicit images of him are available on the internet, and are being sent, received, downloaded and possessed by others. How he asks a judge to sentence anyone sending, receiving, downloading or possessing these images of him seems to reveal the depths of his rage, and is suggestive of the sexual crimes he had to endure. His statement reflects doodles, too, that are disturbing. Perhaps most concerning is his brief assertion that he has no psychological or

emotional long term effects as a result of the defendant's crimes. (Id.)

His brother, a 13-year old in the 8th grade, also conveys his embarrassment; he feels "tortured," and suggests that he will never forget what happened to him. (Exhibit C.) He asks that judges sentence anyone sending, receiving, or possessing sexually explicit images of him to "30 year[s] in jail." His doodles are also disturbing and appear lewd. (Id.)

The third victim impact statement provides a parental perspective of the harm created by such crimes. (Exhibit D.) A mother describes in detail how her daughter was "abused repeatedly" to create sexually explicit images which were made widely available on the internet. (Id at 2.) She specifically addresses the seriousness of sharing and possessing such images: "Without a market to receive and trade those images, without the encouragement of those who wanted to acquire the images, ...this abuse would not have occurred." (Id.) She later states that "each and every image" should be "burned" to ease her daughter's fear and sense of humiliation, and to prevent further victimization.[3]  (Id. 2, 4.)

Accordingly, in order to adequately reflect the seriousness of this crime, provide just punishment, to promote respect for the law, to protect the public, and to deter other potential offenders in the future, the Court should impose the requested sentence of 130 months.

## CONCLUSION

For the foregoing reasons the United States requests that the Court impose a sentence of 130 months which is a reasonable Guidelines sentence after considering the factors under Section 3553(a). The United States concurs with the Probation Office that the custodial term should be followed by a five-year term of supervised release and a special assessment of $100, and that the

//
//
//
//
//

---

[3]  These statements are redacted to protect the identity of the victims, e.g., names, addresses and other identifying information. The reason to protect their identities is plain given the nature of the crimes.

Court should impose a fine between $17,500 - $175,000.

DATED: January 28, 2008

JOSEPH P. RUSSONIELLO
United States Attorney

_____
EUMI L. CHOI
Assistant United States Attorney