**FILED**

2008 JAN 28 P 2: 08

RICHARD W. WICKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

1 | **CRAIG M. BROWN, INC.** SB# 040029
ATTORNEY AT LAW

2 | 333 W. SANTA CLARA STREET, SUITE 260
SAN JOSE, CALIFORNIA 95113-1714

3 | TELEPHONE: (408) 286-8844
FAX: (408 286-6699)

4

5 | **Attorney for Defendant Erik Erdman**

6

7 | UNITED STATES DISTRICT COURT

8 | NORTHERN DISTRICT OF CALIFORNIA

9 | SAN JOSE DIVISION

10

11 | UNITED STATES OF AMERICA,

Case No. CR 07-00390 JW

12 | Plaintiff,

**DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM**

13 | v.

**MOTION FOR DEPARTURE [AND TENTATIVE REQUEST FOR EVIDENTIARY HEARING][1]**

14 | ERIK F. ERDMAN

15 | Defendant.

Date:    February 4, 2008
Time:    1:30 PM

16 | Ct. Rm.: 8, 4th Fl.
Judge:   James Ware

17

18 | Through counsel, Erik F. Erdman hereby files the following sentencing memorandum to

19 | the Court for his sentencing hearing to be held on February 4, 2008 before the Honorable

20 | James Ware.

21 | Mr. Erd[1]man suggests that he receive a sentence of five years confinement, the statutory,

22 | mandatory minimum, pursuant to the statutory directives as set forth in 18 U.S.C. § 3553(a).

23 | **INTRODUCTION**

24 | On June 20, 2007 Erik F. Erdman was charged in a two count felony indictment with

25 | violations of 18 U.S.C. § 2252(a)(1), transportation of child pornography, and 18 U.S.C. §

26

27 | [1] Defendant does not believe an evidentiary hearing should be necessary unless there is any dispute

28 | about his having moved many of the images he downloaded (both adult and child) to "non-shared" files as discussed below.

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM

1

1  2252(a)(4), possession of child pornography. The indictment also contained forfeiture
2  allegations pursuant to 18 U.S.C. §§ 2253(a)(1) and (a)(3) relating to computer equipment
3  seized from Mr. Erdman.
4      On June 21, 2007 Mr. Erdman made his initial appearance before the Honorable Patricia
5  Trumble, United States Magistrate Judge, and on June 26, 2007 Mr. Erdman was released
6  on a $150,000 personal recognizance bond and placed under the supervision of Pretrial
7  Services. Mr. Erdman has been in full compliance with all conditions of his release and has
8  been fully compliant with all directives from the office of Pretrial Services.
9      On October 19, 2007, as part of a negotiated plea agreement between Mr. Erdman and
10 the Government, a superseding information was filed in the United States District Court
11 charging Mr. Erdman with a violation of 18 U.S.C. § 2252(a)(2), receipt of child pornography.
12 The superseding information also alleged the same criminal forfeiture provisions as had been
13 set forth in the indictment.
14     On October 22, 2007, pursuant to a negotiated plea agreement, Mr. Erdman entered a
15 guilty plea to the charge of receipt of child pornography, 18 U.S.C. § 2252(a)(2), before the
16 Honorable James Ware.
17     One of the provisions of the plea agreement included Mr. Erdman's agreement to the
18 forfeiture of the computer equipment previously seized from him, and pursuant to that plea
19 agreement, on November 30, 2007 this Court issued its preliminary order of forfeiture,
20 directing that it shall become final as of the time of sentencing.
21     Additionally, in the plea agreement, Mr. Erdman agreed with the Government that the
22 offense level should be calculated as set forth in the agreement, resulting in an offense level
23 of 32, calculations which are also adopted by the Probation Department in its Pre-Sentence
24 Report.
25     However, and importantly, while agreeing to the calculation in the offense level as set
26 forth in the plea agreement, Mr. Erdman reserved two important rights. First, as set forth in
27 the first sentence of the plea agreement (on p. 5, ¶ 7), Mr. Erdman reserved the right to
28 present any contentions he might have with respect to U.S.S.G. § 2g2.2(b) as were not

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                    2

1  otherwise discussed in the plea agreement. Mr. Erdman specifically reserved this right

2  because of his belief that he is entitled to an additional reduction in the offense level of two

3  levels pursuant to the provisions of U.S.S.G. § 2G2.2(b)(1) which provides that if his conduct

4  was "limited to the receipt or solicitation of material involving the sexual exploitation of a minor"

5  and if he "did not intend to traffic in, or distribute, such material" he is entitled to such a

6  reduction.

7       Mr. Erdman contends that this provision clearly applies to him.   The Probation

8  Department takes the position that by receiving the prohibited materials through a file sharing

9  program, and by not removing them from the "shared file", Mr. Erdman "made available" these

10 materials to others.  However, the Probation Department fails to recognize that it had been Mr.

11 Erdman's regular and routine practice to move the images from the file sharing program to a

12 file which was not shared, thus demonstrating that he did not intend, as the Probation

13 Department asserts, to "make available" the prohibited images, but merely intended to retain

14 them for himself.  His failure was not in trafficking or distributing the material, but in failing to

15 move all of the prohibited materials from a "shared file" to a "non-shared file."

16      In addition to reserving his right to raise that issue, in the plea agreement Mr. Erdman

17 reserved his right to seek a downward departure from the Guidelines' range. This was a topic

18 which was discussed between Mr. Erdman's attorney and the Assistant United States Attorney

19 handling this case, Matt Lamberti, and while a waiver of Mr. Erman's right to seek a downward

20 departure was contained in the early draft plea agreements, by agreement of counsel it was

21 specifically omitted from the agreement to which Mr. Erdman pleaded, and, consequently,

22 consistent with the terms of the plea agreement, Mr. Erdman may appropriately request the

23 downward departure that he now seeks from the court.

24                                  **DISCUSSION**

25 I.    **The Effect of United States v. Booker.**

26      As this Court is well aware, on January 12, 2005, the Supreme court ruled that its Sixth

27 Amendment holding in Blakely v. Washington, 542 U.S. 296 (2004) and Apprendi v. New

28 Jersey, 530 U.S. 466 (2000) applies to the Federal Sentencing Guidelines. (United States v.

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                                    3

1  Booker, 543 U.S. 220 (2005)) Given the mandatory nature of the Sentencing Guidelines, the

2  Court found no relevant distinction between the sentence imposed pursuant to the Washington

3  statutes in Blakely and the sentences imposed pursuant to the Federal Sentencing Guidelines

4  in the cases before the Court. (Id. at 235) Accordingly, reaffirming its holding in Apprendi, the

5  Court concluded that:

6        [a]ny fact (other than a prior conviction) which is necessary to
         support a sentence exceeding the maximum authorized by the
7        facts established by a plea of guilty or a jury verdict must be
         admitted by the defendant or proved to a jury beyond reasonable
8        doubt.

9  (Id. at 244)

10       Based on this conclusion, the Court further found those provisions of the federal

11  Sentencing Reform Act of 1984 that make the Guidelines mandatory, 18 U.S.C. § 3553(b)(1),

12  or which rely upon the Guidelines' mandatory nature, 18 U.S.C. § 3742(e), incompatible with

13  its Sixth Amendment holding.  (Booker, 543 U.S. at 244) Accordingly, the Court severed and

14  excised those provisions, "mak[ing] the Guidelines effectively advisory." (Id. At 245)

15       Instead of being bound by the Sentencing Guidelines, the Sentencing Reform Act, as

16  revised by Booker,

17        requires a sentencing court to consider Guidelines ranges, see 18
          U.S.C.A. § 3553(a)(4) (Supp. 2004), but it permits the court to tailor
18        the sentence in light of other statutory concerns as well, see §
          3553(a)
19
   (Booker, 543 U.S. at 245-246) Thus, under Booker, sentencing courts must treat the
20
   Guidelines as just one of a number of sentencing factors set forth in 18 U.S.C. § 3553(a).
21
        Mr. Erdman recognizes that USSG § 5K2.0(b) and 18 U.S.C. § 3553 (b)(2)(A)(ii) purport
22
   to limit the discretion of a District Court judge to impose a non-Guideline sentence in an
23
   offense involving possession of child pornography to the factors set forth in 18 U.S.C. §
24
   3553(a)(4) unless:
25
          (ii) the court finds that there exists a mitigating circumstance of a
26        kind or to a degree, that–

27        (I) has been affirmatively and specifically identified as a permissible
          ground of downward departure in the sentencing guidelines or
28        policy statements issued under section 994(a) of title 28, taking

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                    4

account of any amendments to such sentencing guidelines or policy statements by Congress;

(II) has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and

(III) should result in a sentence different from that described. (18 U.S.C. § 3553 (b)(2)(A)(ii))

While the Ninth Circuit Court of Appeals has thus far declined to rule on the issue of whether that statute violates the Sixth Amendment as construed by Booker, (see United States v. Kuchinski, 469 F.3d 853, 861 (9th Cir. 2006)), the majority of federal courts that have considered the issue have ruled that § 3553(b)(2) suffers from the same constitutional defect as does 18 U.S.C. § 3553(b)(1), which was explicitly invalidated in Booker.[2] As such, Mr. Erdman asserts that any of the § 3553(a) factors, not just § 3553(a)(4), may be considered in determining his sentence.

The primary directive in § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." Section 3553(a)(2) states that such purposes are:

(A)    to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B)    to afford adequate deterrence to criminal conduct;
(C)    to protect the public from further crimes of the defendant; and
(D)    to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In determining the minimally sufficient sentence, § 3553(a) further directs sentencing courts to consider the following factors:

1)    the nature and circumstances of the offense and the history and characteristics of the defendant (§ 3553(a)(a));
2)    the kinds of sentences available (§ 3553(a)(3));
3)    the need to avoid unwarranted sentence disparities among defendants with similar conduct (§ 3553(a)(6)); and
4)    the need to provide restitution to any victims of the offense. (§ 3553 (a)(7)).

---

[2] See United States v. Hecht (4th Cir. 2006) 470 F.3d 177, 180-181 ["[E]very circuit court to address this issue has held that section 3553(b)(2) suffers from the same defects identified in Booker and requires the same remedy – excising and severing section 3553(b)(2) and replacing it with an advisory guidelines regime under which sentences are reviewed for reasonableness."]; United States v. Jones, 444 F.3d 430 (5th Cir. 2006); United States v. Grigg, 442 F.3d 560, 564 (7th Cir. 2006); United States v. Selioutsky, 409 F.3d 114, 117 (2nd Cir. 2005); United States v. Yazzie, 407 F.3d 1139, 1146 (10th Cir. 2005) (en banc).

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM

5

1    Other statutory sections also give the district court direction in sentencing. Under 18

2  U.S.C. § 3582, imposition of a term of imprisonment is subject to the following limitation: in

3  determining whether and to what extent imprisonment is appropriate based on the Section

4  3553(a) factors, the judge is required to "recogniz[e] that imprisonment is *not* an appropriate

5  means of promoting correction and rehabilitation." (emphasis added). This statutory language

6  certainly overrides the (now-advisory) policy statements in Part H of the Sentencing

7  Guidelines, which list as "not ordinarily relevant" to sentencing a variety of factors such as the

8  defendant's age, educational and vocational skills, mental and emotional conditions, drug or

9  alcohol dependence, and lack of guidance as a youth. (See USSG § 5H1; United States v.

10  Ameline, 409 F.3d 1073, 1093, 1112 n. 2 ((th Cir. 2005))

11    The directives of Booker and § 3553(a) make clear that courts may no longer uncritically

12  apply the Guidelines. Such an approach would be "inconsistent with the holdings of the merits

13  majority in Booker, rejecting the mandatory Guideline sentences based on judicial fact-finding,

14  and the remedial majority in Booker, directing courts to consider all of the § 3553(a) factors,

15  many of which the Guidelines either reject or ignore." (United States v. Ranum, 353 F. Supp.

16  2d 984, 985-86 (E.D. Wisc. 2005)) Justice Scalia explains the point well in his dissent from

17  Booker's remedial holding:

18          [L]ogic compels the conclusion that the sentencing judge, after
            considering the recited factors (including the Guidelines), has full
19          discretion, as full as what he possessed before the Act was passed,
            to sentence anywhere within the statutory range. If the majority
20          thought otherwise – if it thought the Guidelines not only had to be
            "considered" (as the amputated statute requires) but had generally
21          to be followed – its opinion would surely say so.

22  (Booker, 543 U.S. at 305-306 (Scalia, J., dissenting in part)) Likewise, if the remedial majority

23  thought the Guidelines had to be given "heavy weight," its opinion would have said so. The

24  remedial majority clearly understood that giving any special weight to the Guideline range

25  relative to the other § 3553(a) factors would violate the Sixth Amendment.

26    In sum, in every case, a sentencing court must now consider all of the § 3553(a) factors,

27  not just Guidelines, in determining a sentence that is sufficient but not greater than necessary

28  to meet the goals of sentencing. And where the Guidelines conflict with other sentencing

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                                    6

1  factors set forth in § 3553(a), these statutory sentencing factors should generally trump the

2  Guidelines.

3  **II.    Application of the Factors Set Forth In 18 U.S.C. § 3553(a)**

4      Mr. Erdman has accepted responsibility for his conduct and the societal problem that it

5  represents.  (See Probation Officer's Pre-Sentence Report ("PSR") at ¶16 and attached

6  psychologist evaluation at p. 8).

7      Applying the factors set forth above, Mr. Erdman sets forth the following factors that

8  warrant consideration of a term of imprisonment closer to the mandatory minimum required

9  by statute (i.e. five years):

10 **A.    The nature and circumstances of the offense and the history and characteristics**

11 **of the Defendant (18 U.S.C. § 3553(a)(1))**

12     On December 12, 2006 undercover FBI investigators logged onto the internet and using

13 Limewire software connected to a peer to peer file sharing network.  By so doing, the agents

14 were able to connect to a computer bearing a specific IP address and were able to determine

15 that a number of files contained on that computer contained child pornography images.  The

16 agents were subsequently able to identify that computer as belonging to Mr. Erdman and were

17 able further to determine that it was associated with his home address in Sunnyvale.

18     Thereafter, on February 2, 2007, pursuant to search warrant, FBI agents searched

19 Defendant's residence in Sunnyvale and seized two of his computers.  A search of those

20 computers disclosed that each of them contained images consisting of adult and child

21 pornography. According to the FBI reports Mr. Erdman told the agents that he was certain that

22 no one in his household was able to access his computers and that no one in his family knew

23 about his interest in pornography.  Mr. Erdman also told the agents that he did not use a

24 thumb drive and has not stored images of child pornography on disks or other removable

25 media and, further, that he has never printed an image containing child pornography.

26     Also, Mr. Erdman told the agents that he had an interest in adult pornography and that

27 a large collection of it would also be found on his computers.

28     During the course of his psychological evaluation, Mr. Erdman shared with the therapist

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                                    7

1  that his initial interest in pornography had been in adult pornography, an interest which he also

2  kept unknown to his family.  Mr. Erdman characterized his interest to the therapist as an

3  "addiction" and characterized it as something that increased after he was laid off work and was

4  depressed in 2001 through 2003.

5      The nature and circumstances of the offense presented here is no more egregious then

6  other offenses of the same nature.  Mr. Erdman has admitted to collecting images of child

7  pornography by downloading such material on the internet.  However, there is no evidence

8  that he ever distributed this material in any way, nor that he ever showed this material to

9  anyone else, nor that he had any purpose for this collection other then his own gratification.

10  While the number of pornographic images possessed by Mr. Erdman is large, it is suggested

11  that the moral and penological distinction between the collection of ten (10) images and five

12  thousand (5,000) tends to disappear in this era of internet speed and accessibility.  In any

13  case, Mr. Erdman has admitted to possession of more then six hundred (600) images of child

14  pornography pursuant to U.S.S.G. § 2G2.2(b)(7)(D).

15      Counsel for Mr. Erdman, in his objections to the draft pre-sentence report, endeavored

16  to address three aspects of that report which remain unresolved in the final report.

17      First, there is no mention in the report to the existence of any adult pornography on Mr.

18  Erdman's computers.  While it is hardly a defense to suggest that the presence of adult

19  pornography should somehow mitigate the possession of child pornography, given the fact

20  that it is common for people to suggest that the mere interest in or possession of child

21  pornography suggests a predisposition toward pedophilia, it perhaps at least bears mention

22  in this case that Mr. Erdman's interest, (and as explained both to the FBI and to his therapist)

23  is as much in pornography, generally, as opposed to child pornography, specifically, and yet

24  there is not even a mention in the pre-sentence report of Mr. Erdman's longstanding interest

25  in and possession of adult pornography.

26      Second, while both the FBI report and the pre-sentence report talk about the number of

27  images possessed by Mr. Erdman on his computers (emphasis on the plural), no effort is

28  made to distinguish between the images in "shared" files (which might be accessed by others)

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                                    8

1  and the images in "non-shared" files (which would not be accessible by others). It is important

2  that this be emphasized, because it relates to the "file sharing" issue discussed in the pre-

3  sentence report, wherein it is suggested that Mr. Erdman "made available" his pornographic

4  images.

5      In fact, (and if there is any dispute as to this, this is the only issue for which Mr. Erdman

6  would even raise the issue of whether an evidentiary hearing might be appropriate), many of

7  the images on Mr. Erdman's computers were not accessible by any other user, and, in fact,

8  Mr. Erdman generally made it a practice to move the images from the shared files to non-

9  shared files, a fact totally overlooked in the pre-sentence report.

10     As defense counsel endeavored to emphasize in his objections to the draft report, Mr.

11 Erdman downloaded both adult and child pornography and routinely moved that material to

12 non-shared files so that it could not and would not be shared, for that material was for his

13 personal use alone. Mr. Erdman's failure here, with respect to the specific files at issue, was

14 not in taking an affirmative step to send them or transmit them or distribute them to another,

15 but, rather, in failing to remove them from the shared files.

16     As defense counsel indicated to the probation officer, this may be a subtle distinction, but

17 one which the defense believes is important. On the one hand, it does not in any way detract

18 from Mr. Erdman's culpability for violating the statute to which he has pleaded. However, not

19 withstanding the fact that the penalties for both offenses are identical, Mr. Erdman steadfastly

20 refused to plead guilty to transportation of child pornography, and insisted on pleading to

21 receiving child pornography because he felt that the latter offense more accurately described

22 his crime. This was a distinction which was ultimately agreed to by the Government and is

23 reflected in the plea agreement.

24     As noted in the PSR, Mr. Erdman has been a devoted son, husband, and father

25 throughout his life, and has no prior criminal history. No evidence exists to suggest that he

26 ever engaged in any inappropriate conduct with children or ever participated in the creation

27 or distribution of any pornographic materials or in utilizing the internet or any other means to

28 have any inappropriate contact with children or to communicate with anyone regarding

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                                    9

1   pornographic materials.

2   **B.    The sentence imposed is to reflect statutory goals (18 U.S.C. § 3553(a)(2))**

3   What we are presented with in this case is a situation in which Mr. Erdman had a

4   longstanding interest in adult pornography, and when coupled with the access provided by the

5   internet to such materials, found himself enmeshed in the world of not only adult but child

6   pornography as well, all of which is far too prevalent on the internet.  Perhaps having

7   somewhat of an addictive personality, and suffering from both depression and perhaps

8   stresses relating to personal relationships, Mr. Erdman found himself, in the quiet and dark

9   and privacy of his own room sucked into the morass of internet child pornography.

10   There is no question that the law requires punishment.  Mr. Erdman understands that and

11   is prepared to accept whatever the Court imposes.  However, at some point it must be asked,

12   when evaluating a person such as Mr. Erdman, just how much punishment is needed to

13   punish him, to provide adequate deterrence to him in the future, protect the public, and to send

14   a message throughout society as to the intolerance we have for such conduct?

15   **C.    The need to avoid unwarranted sentence disparities (18 U.S.C. § 3553(a)(6))**

16   As is true in so many cases, involving a variety of criminal offenses, great discretion is

17   afforded to the prosecutors and judges who handle such matters.  Defendant is quick to

18   recognize that comparing one criminal case to another is an extraordinarily difficult task, and

19   rarely productive.  How a prosecutor chooses to exercise his/her discretion in one case, is not

20   necessarily useful in determining how it should be exercised by a different prosecutor in a

21   different case.  Likewise, a sentence one judge imposes in a certain case cannot and should

22   not be said to be determinative as to how another judge should impose a sentence in a similar

23   but different case.

24   Having said all of that, however, the statute does obligate the Court, in determining the

25   particular sentence to be imposed, to consider "the need to avoid unwarranted sentence

26   disparities among defendants with similar records who have been found guilty of similar

27   conduct" (18 U.S.C. § 3553(a)(6)), thus, apparently inviting some consideration, to the extent

28   deemed appropriate, to consider how similar cases are handled.

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                    10

Here, defense counsel is probably the least equipped to make that determination, at least when compared to the ability of the Court or the United States Attorney's Office, or even the Probation Department to do so. However, merely considering those cases involving child pornography which have been the subjects of press releases issued by the United States Attorney's Office during the past year, it appears that the sentence recommended by the Probation Department is excessive in this case, and that such a consideration warrants a downward departure to a term closer to the statutory minimum.

Defense counsel does not know to what extent the Court wishes to consider such things, but from having undertaken such a review, defense counsel believes that the nine (9) year sentence being recommended by the Probation Department seems excessive, and that a more significant downward departure would be appropriate. The cases reviewed are as follows:

| Case No. | Charge | Case Specifics | Defendant Characteristics | Sentence |
|---|---|---|---|---|
| CR 06-0746 | Possession 18 U.S.C. § 2252(a)(4)(b) | Over 5,500 images downloaded from internet (U.S. Attorney's Office could just have easily charged receipt or transportation as was done in the instant case) included images characterized as prepubescent and sadistic and masochistic | No prior record | 63 mos. |
| CR 07-00060 | Receiving 18 U.S.C. § 2252(a)(2)(A)(B) | Over 1,000 images, prepubescent, sadistic and masochistic; | Defendant also took pictures of 7 & 8 year old girls in sexual poses | 97 mos. |
| 05-00373 | Advertisement 18 U.S.C. § 2252(a)(3) (b); attempt to transportation 18 U.S.C. § 2252 (a)(1); possession 18 U.S.C. § 2252 (a)(4) | Thousands of images, prepubescent | Defendant created website and posted on it to make money | 12 years |

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM

| 05-00811 | Transmission 18 U.S.C. § 2252(a)(1); Receipt 18 U.S.C. § 2252(a)(2) | Unknown quantity | Defendant had "disturbing" emails on his computer | 72 mos. |
|---|---|---|---|---|
| 06-0326 | | Unknown quantity, prepubescent | had prior convictions for sexual molestation | 10 yrs per stipulation |
| CR-00482 | Possession | Unknown | Prior sex conviction and was on probation at time of offense | 10 years |
| CR 07-0329 | Receipt and transportation 18 U.S.C. § 2252(A)(a)(3)(B) | Hundreds of images | Also sent hundreds of emails with pornographic images | 70 mos. |
| 4:06-CR 00441 | Transportation | Chat room; sent porn video over internet in context of making contact for sex | | 78 mos. (Govt. stipulated) |
| 05-0067 | Transportation, receipt, possession (10 counts, 6 of transportation) | Prepubescent, sadistic, masochistic | | 10 years |

Defendant realizes that it is hard to analyze and compare these cases, and calls the Court's attention to them with some reservation recognizing that there may be many other cases defense counsel is unaware of, analysis of which may not necessarily lead to the conclusion for which Defendant is seeking. However, Defendant believes it is fair to suggest that one conclusion which might be reached in looking at these cases is that for this Defendant, in light of his background, and in light of the conduct in which he did engage, and the conduct in which he did not engage, a sentence more akin to the mandatory minimum would be appropriate.

## III.    Proposed Conditions of Supervised Released

### A.    Restrictions on computer use and internet access

The Probation Office has recommended that, as conditions of supervised release, Mr. Erdman: (a) not be employed in any capacity in which has access to a computer or the

1  internet, without the prior approval of the probation officer (sentencing recommendation at ¶

2  1; (b) not possess or use a computer with access to any "on-line computer service" at any

3  location (including employment) without the prior approval of the probation officer *id.* at ¶ 4;

4  (c) not possess or use any data encryption technique or program (*id.* at ¶ 5); (d) consent to the

5  probation officer conducting periodic unannounced examinations of his computer equipment

6  (*id.* at ¶ 6); (e) consent at the direction of the probation officer to having installed on his

7  computers, at the Defendant's expense, any hardware or software systems to monitor his

8  computer use (*Id.* at ¶ 6) and (f) maintain a daily log of all addresses he accesses via any

9  personal computer other than for authorized employment (*id.* at ¶ 8)

10      18 U.S.C. § 3583(d) provides that a court may impose special pose-release conditions

11  only when certain criteria are met.  First, post-release conditions must be reasonably related

12  to the factors set forth in § 3553(a)(1), (a)(2)(B), (a)(2)(C), and (a)(2)(D).  (18 U.S.C. § 3583

13  (d)) These factors include: (1) "the nature and circumstances of the offense and the history

14  and characteristics of the defendant," (2) the need "to afford adequate deterrence to criminal

15  conduct." (3) the need "to protect the public from further crimes of the defendant," and (4) the

16  need "to provide the defendant with needed [training], medical care, or other correctional

17  treatment in the most effective manner." (18 U.S.C. § 3553(a)(1)-(2)) In addition, post-release

18  conditions cannot involve a greater deprivation of liberty than is reasonably necessary to

19  achieve those three statutory goals.  (See 18 U.S.C. § 3583 (d)(2))

20      Given the pervasiveness of computer use in general and the Internet in specific in our

21  society, a number of federal circuits have expressed the view that a total ban on Internet

22  access without the permission of the probation officer is an overbroad condition of supervised

23  release, and that such a condition is justified only where there is evidence that the defendant

24  intended to utilize the Internet to meet and victimize children.  (See e.g., United States v.

25  Crume, 422 F.3d 728 (8th Cir. 2005) [where defendant possessed child pornography, a broad

26  ban on access to computers and the Internet without written consent of a probation officer was

27  not reasonably necessary]; United States v. Freeman, 316 F.3d 386, 391-92 (3rd Cir. 2003)

28  [vacating absolute Internet prohibition in absence of evidence that defendant had used

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                                    13

1  Internet to contact children]; <u>United States v. Sofsky</u>, 287 F.3d 122, 126-27 (2nd Cir. 2002)

2  [vacating and remanding strict Internet prohibition where defendant pleaded guilty to only

3  receipt of child pornography]; <u>United States v. White</u>, 244 F.3d 1199, 1205 (10th Cir. 2001)

4  [finding ban on all Internet and computer use to be "greater than necessary" to serve goals of

5  supervised release where defendant had been convicted only of possession of child

6  pornography]; <u>United States v. Crandon</u>, 173 F.3d 122, 127-28 (3rd Cir. 1999) [upholding post-

7  release ban on Internet use where defendant convicted of receiving child pornography had

8  also engaged in sexual relations with an underage girl he had met via e-mail])

9       Mr. Erdman suggests that the conditions regarding computer and Internet use during his

10  period of supervised release are overbroad as not being the least restrictive means than are

11  reasonably necessary to achieve the goals set forth in § 3553(a).  To totally prohibit Mr.

12  Erdman from using the Internet would be to enjoin him from using his computer to do the

13  mundane but necessary life tasks that we have all taken for granted for a decade: using

14  Internet maps to find his way around the community; sending and receiving email from friends,

15  family and colleagues; looking for employment or volunteer opportunities; filing taxes online;

16  reading news from sources not published in print; paying bills and banking online, etc. Further,

17  requiring that Mr. Erdman maintain a manual "daily log" of each Internet address he visits

18  would be a burdensome and unreasonable task unrelated to his rehabilitation or the protection

19  of the community, and would be better achieved through monitoring software that could be

20  installed on his computer.  Further, Mr. Erdman's work experience and training has involved

21  computers and internet access, and these conditions virtually exclude him from his career path

22  (see P.S.R. at ¶ 57).

23       Mr. Erdman suggests that any concerns regarding his future potential for utilizing the

24  Internet to recidivate might be appropriately addressed by a condition of supervised release

25  that mandates he install filtering software that would block access to sexually-oriented

26  websites, and to permit the probation office unannounced access to verify that the software

27  is functioning properly.

28

## IV.   Request For Placement Within the Bureau Prisons

Mr. Erdman requests that this Court recommend to the bureau prisons that he be confined at a facility as close to the San Francisco Bay Area as possible. All of Mr. Erdman's closest relatives, his wife, his children, his sister, and his mother and father reside in Santa Clara County, and in light of even the mandatory minimum which Mr. Erdman faces, his family is anxious to have as much access to him for visitation purposes as is possible.

## V.   Request For Voluntary Surrender

The Probation Office's sentencing recommendation indicates that Mr. Erdman is viewed as a good candidate for voluntary surrender. He has kept all court appearances and has fully complied with the conditions of pretrial release and is not viewed as a flight risk or a danger to the community.

Mr. Erdman has been free on personal recognizance bond since June 26, 2007. He has substantial ties to the community and has been a resident of Santa Clara County since childhood. As indicated above, all of his closest family members also live in Santa Clara County. Mr. Erdman voluntarily surrendered his passport (expired) at the time he was released on bond. Mr. Erdman's supervising officer from Pretrial Services, if asked, would support an order of voluntary surrender. It is therefore requested that Mr. Erdman be able to surrender himself directly to the institution chosen by the Bureau of Prisons on a date agreeable to this Court.

Dated: January 28, 2008                    CRAIG M. BROWN, INC.


By: _____
     Craig M. Brown
     Attorney for Defendant
     ERIK ERDMAN

DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM                    15

**PROOF OF SERVICE**

RE: United States v. Erik Erdman

USDC Court Case No.: CR 07-00390

I declare that:

I am a citizen of the United States and over the age of eighteen (18) years and not a party to the within action. My business address is 333 West Santa Clara Street, Suite 260, San Jose, California 95113-1714. I am readily familiar with the business practice for collection and processing of correspondence for mailing with the United States Postal Service. On the date set forth below, I served a copy of the attached **DEFENDANT ERIK F. ERDMAN'S SENTENCING MEMORANDUM; MOTION FOR DEPARTURE [AND TENTATIVE REQUEST FOR EVIDENTIARY HEARING]**

on the following party(ies) in said action by placing a true copy thereof enclosed in a sealed envelope addressed as follows:

Eumi Choi
Assistant United States Attorney
150 Almaden Boulevard, Suite 900
San Jose, CA 95113
(408) 535-5066
(*via facsimile*)

Waseem Iqbal
U.S. Probation Officer
Northern District of California
280 South First Street, Suite 106
San Jose, CA 95113
(*via hand delivery*)

**XX**    [By Mail] I caused such envelope(s) with postage thereon fully prepaid to be placed in the U.S. Mail at San Jose, California.

**XX**    [By Facsimile] I caused said document to be transmitted by facsimile machine to the number indicated herein.

**XX** [ By Personal Delivery] I caused such envelope to be personally delivered to the parties listed.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed on **JANUARY 28, 2008**, at San Jose, California

MONIQUE DAVALOS